Ms. Cathie Matthews Director, Department of Arkansas Heritage 323 Center Street, Suite 1500 Little Rock, AR 72201
Dear Ms. Matthews:
This is in response to your request for an opinion on several questions concerning the implementation and effect of Act 1051 of 1999, an appropriation act providing grants for, inter alia, restoration and repair of historic properties. Your specific questions are restated as follows:
1. Does Act 1051 of 1999 conflict with Act 156 of 1993?
 2. Will the Historic Preservation Program negate their revolving loan program created by Act 156 of 1993 by creating the grant program created by Act 1051 of 1999?
 3. Would the Department of Arkansas Heritage (DAH) be reneging on its promise to the Arkansas Department of Finance and Administration (ADFA) and to the people of Arkansas by removing the DAH-pledged funds to create the grant program under Act 1051?
You state, with regard to your first two questions, that you are uncertain whether the removal of the funds from the loan program is a permanent action or limited to the life of the present funds. Regarding the third question, you relate the fact that DAH has pledged $250,000 from the Historic Preservation Revolving Loan Fund to a low-interest loan fund administered by ADFA for the development of businesses in Arkansas that would increase tourism potential. You note further that while DAH has no signed contract obligating the $250,000 to the ADFA loan program, public notice and marketing for those funds has been on going.
RESPONSE
Question 1: Does Act 1051 of 1999 conflict with Act 156 of 1993?
While it may be correct to state that the two acts conflict in the sense that a certain amount of assets are clearly being removed from the Historic Preservation Revolving Loan Fund to provide funds for the appropriation under Act 1051, the General Assembly has clearly expressed its intent to make this transfer. To the extent of any conflict in this regard, therefore, it seems clear that Act 1051 is controlling as the later act. Some explanation of the two acts is necessary.
As noted, Act 1051 of 1999 is an appropriation act. It is entitled:
 AN ACT TO MAKE AN APPROPRIATION TO THE DEPARTMENT OF ARKANSAS HERITAGE FOR PROVIDING GRANTS FOR RESTORATION OF PROPERTIES CONSTRUCTED DURING THE ARKANSAS TERRITORIAL PERIOD AND HISTORIC PROPERTIES DESTROYED BY NATURAL DISASTER; AND FOR GRANTS TO ARKANSAS CITIES FOR STREETSCAPE IMPROVEMENTS. . . .
The act appropriates a total of $500,000 to DAH for the grants, "to be payable from the Natural and Cultural Resources Historic Preservation Fund. . . ." Acts 1999, No. 1051, §§ 1 and 2. A funds transfer is then effected under Section 3 of the act in order to fund the appropriation, as follows:
 Immediately upon the effective date of this Act, the Chief Fiscal Officer of the State shall transfer on his books and those of the State Treasurer the assets and cash in the sum of five hundred thousand dollars ($500,000) or as much as is available thereof from the Historic Preservation Revolving Loan Fund to the Natural and Cultural Resources Historic Preservation Fund to provide funds for the appropriations provided herein.
Act 156 of 1993 (A.C.A. §§ 13-7-501 through -507), entitled the Historic Preservation Loan Act, created the Historic Preservation Revolving Loan Fund ("Revolving Loan Fund"). See A.C.A. § 13-7-504 (Repl. 1995). The Arkansas Historic Preservation Program ("Preservation Program") administers the Revolving Loan Fund and loans are made from the Fund in accordance with the act. A.C.A. § 13-7-504(a). See also A.C.A. §13-7-505(a) (providing that loans shall be made to owners of registered cultural properties for restoration, rehabilitation, or repair.)
I believe the Legislature has clearly expressed its intent to fund the appropriation under Act 1051 of 1999 with up to $500,000 of available assets and cash from the Revolving Loan Fund. An obvious conflict arises in the sense that the Preservation Program will not have the use of these transferred funds for the revolving loan program. The Legislature is presumed, however, to be aware of this "conflict" when it enacted the transfer provision under Act 1051.
Question 2: Will the Historic Preservation Program negate their revolvingloan program created by Act 156 of 1993 by creating the grant programcreated by Act 1051 of 1999?
It is my opinion that the answer to this question is "no." I do not believe it is correct to say that the grant program under Act 1051 negates the revolving loan program. Act 156 of 1993, which as noted created the Revolving Loan Fund, remains in effect. (A.C.A. §§ 13-7-501 to -507.) While the transfer required by Act 1051 may have depleted the Revolving Loan Fund (depending upon the balance in the Fund at the time of transfer), the Preservation Program will presumably continue to administer any future funds that become available. See A.C.A. § 13-7-504
(regarding source of funds for the Revolving Loan Fund). I do not construe Act 1051 as affecting such funds. Rather, in my opinion, by requiring the transfer of "[$500,000] or as much as is available thereof" (Section 3 of Act 1051, supra), the Legislature in essence called for a one-time transfer from the Revolving Loan Fund. This was a permanent action as regards the transferred funds. But I do not read this as requiring future fund transfers.
Question 3: Would the Department of Arkansas Heritage (DAH) be renegingon its promise to the Arkansas Department of Finance and Administration(ADFA) and to the people of Arkansas by removing the DAH-pledged funds tocreate the grant program under Act 1051?
I assume that the funds transfer, discussed above, will prevent DAH from honoring its pledge to the low-interest loan program administered by ADFA. If DAH must, accordingly, renege on its promise to ADFA, it would seem that this is nevertheless an unavoidable consequence of the passage of Act 1051.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:EAW/cyh